# IN RE PETITION OF DAVID WAYNE GARRITSON v. STATE.

229 N. W. 2d 36.

May 9, 1975—No. 44948.

*C. Paul Jones,* State Public Defender, and *William F. Forsyth,* Special Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, *Gary Hansen,* Special Assistant Attorney General, and *John Corbey,* County Attorney, for respondent.

Heard before Rogosheske, Peterson, and Todd, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from an order of the Blue Earth County District Court discharging a writ of habeas corpus which had been issued to challenge an extradition proceeding. Appellant was charged with uttering forged instruments in the Iowa counties of Cherokee, Ida, and Buena Vista on or about November 15, 1973. He was arrested in Good Thunder, Minnesota, on December 20, 1973. Extradition proceedings were commenced in Blue Earth County, Minnesota, by the State of Iowa and the appellant petitioned for a writ of habeas corpus, alleging that he was

not within the State of Iowa when the offenses occurred. Following a hearing on January 24 and 25, 1974, the court ordered the writ discharged. On January 29, 1974, the governor of Minnesota issued a rendition warrant. This appeal is from the order discharging the writ.

At the habeas corpus proceeding, appellant testified that he was not present in Iowa at the time of the crimes, and further claimed that his only trip outside the State of Minnesota during that period was to Sioux Falls, South Dakota. He also presented testimony of Mrs. Josephine Carnicle, the mother of a friend, to the effect that appellant was present at her home from mid-October 1973 to mid-December 1973, that she had seen appellant daily between November 14 and 21 and that, to her knowledge, he was not absent from her home during the questioned period.

Mary Catherine Wright, an employee at Lee's Hardware in Cherokee, Iowa, testified for the state that appellant was in that store for approximately 15 minutes, that she waited on him for approximately 5 minutes, and that he purchased some tools by presentation of a check. She further remembered that the check was in the amount of $98.64 and that the customer received approximately $85 in change. Law enforcement officers contacted Ms. Wright approximately 10 days after the check had been presented. She was shown the check and two photographs, from which she was able to identify appellant as the person who had presented the check.

The second witness for the state, Vern Tredway, allegedly had contact with appellant while the former was employed at the Cherokee, Iowa, Coast-to-Coast Store. On November 17, 1973, a customer presented a check in the amount $98.64 and endorsed it with the name of William Owens, the same endorsement as upon the check presented to Ms. Wright. The man allegedly was present in the store for approximately 10 minutes, all of which time was spent with Tredway. He was able to identify appellant from three or four photographs shown him by police officers, although at the hearing he was, unlike Ms. Wright, not able to

state unequivocally that appellant and the customer were the same person. His testimony also indicates that this customer had short hair and was clean-shaven and that his in-court identification difficulties stemmed from the fact that the appellant now has a beard and longer hair.

Appellant moved that the testimony of both Ms. Wright and Mr. Tredway be stricken because the procedures of identification were so suggestive as to be a denial of due process. The motion was denied and an order was entered discharging the writ of habeas corpus.

The only issue presented is whether or not, in a habeas corpus proceeding challenging extradition, the court of the asylum state should rule on the admissibility of alleged constitutionally tainted testimony.

We feel that it is unnecessary to recite all the testimony and circumstances relied upon by appellant to buttress his claim that the identification procedures were tainted because, initially, we hold that such issues are beyond the scope of the habeas corpus proceeding. In analyzing such issues, the court in United States ex rel. Vitiello v. Flood, 374 F. 2d 554 (2 Cir. 1967), stated:

"Miranda and similar cases forbid the use of unlawfully obtained confessions and admissions as evidence against an accused at a trial where there is at stake the vital issue of his guilt or innocence. If Vitiello is put to trial on the charges in the information, all of these safeguards will be available to him, and any evidential matter of this kind which has been unlawfully obtained will be suppressed or excluded. His constitutional rights to such limitations on the use of evidence on the issue of his guilt or innocence is not at issue in the rendition proceeding. What is in issue is the constitutional right of the State of Florida to have Vitiello promptly returned to that state on a showing of probable cause." 374 F. 2d 557.

This seems only logical, since to hold otherwise would only open the door for the determination of all constitutional issues con-

cerning the suppression of evidence. It can be clearly seen that this would have no place in a habeas corpus proceeding concerning extradition.

The precise issue before this court was recently decided in Commonwealth v. Kulp, 225 Pa. Super. 345, 310 A. 2d 399 (1973). In that case the claim was that the identification at a habeas corpus proceeding was impermissibly suggestive and tainted. The court held that these summary proceedings do not entitle an accused to the full panoply of procedural protection which he might normally expect at a criminal trial, and that such issues, more properly raised at trial, should not be considered by the habeas corpus court.

We have held many times:

"* * * Where the person whose extradition is sought does present evidence of his absence from the demanding state, the presumptive effect of the rendition warrant places the burden upon him to prove his absence. That burden is the strenuous one, not being satisfied by a mere preponderance of the evidence, but requiring evidence that 'clearly and satisfactorily' or 'conclusively' proves absence. Conversely stated, 'the question of alibi is not open for consideration if there is fair evidence that the appellant was at the place of the crime at the time of it.' " State v. Limberg, 274 Minn. 31, 36, 142 N. W. 2d 563, 566 (1966).

See, also, State ex rel. Rhodes v. Omodt, 300 Minn. 129, 218 N. W. 2d 461 (1974).

In no way do we treat the great writ of habeas corpus lightly, but we must remember that extradition is also a constitutional mandate and that no useful purpose would be served by unduly restricting such a procedure with issues that basically concern the question of guilt or innocence. Such issues will ultimately and quite properly be determined by constitutionally required pretrial proceedings and the trial itself in the demanding state.

From a reading of the record, the evidence of appellant's presence in Iowa is sufficient for purposes of a habeas corpus hear-

ing, and we will not disturb the court's findings. This is the only issue; therefore the trial court's order discharging the writ of habeas corpus is affirmed.

Affirmed.